**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

CHRISTOPHER D. LYMAN et al.,

    *Plaintiffs,*

v.             Case No. 25-2023-EFM-RES

COREY ODELL et al.,

    *Defendants.*

**MEMORANDUM AND ORDER**

Before the Court are three Motions to Dismiss brought by Defendants Corey Odell ("Detective Odell"), Terra N. Frazier ("Dr. Frazier"), and Erik K. Mitchell ("Dr. Mitchell"). Plaintiffs Christopher Dale Lyman, Tammarisk Thompson, E.L., and M.L. bring this suit under 42 U.S.C. § 1983 alleging Defendants violated their constitutional rights in various ways through the investigation and prosecution of Mr. Lyman for the death of J.S. For the reasons stated herein, the Court grants in part and denies in part Dr. Mitchell's Partial Motion to Dismiss (Doc. 67); denies Dr. Frazier's Motion to Dismiss (Doc. 71); and grants in part and denies in part Detective Odell's Motion to Dismiss (Doc. 69).

### I.  Factual and Procedural Background[1]

The Court recited the facts in this case in its previous order on Defendants' motions to dismiss Plaintiffs' initial complaint. The Amended Complaint leaves the factual narrative intact and adds some additional facts. As such, the Court incorporates the factual recitation from its previous order and recites the most relevant here.

---

[1] The facts are taken from Plaintiff's Amended Complaint and are considered true for purposes of this Order.

This case arises out of the exceedingly sad circumstances related to J.S.'s untimely death.

J.S. was the infant nephew of the then-married Mr. Lyman and Ms. Thompson and the son of Ms. Thompson's sister. J.S.'s development in utero was complicated by infection and his mother's involvement in two serious accidents. After his birth, J.S. suffered several health complications and was hospitalized on numerous occasions.

. . .

Ms. Thompson and Mr. Lyman agreed to watch J.S. while his mother worked.

. . .

In the early morning hours of September 15, 2013, Mr. Lyman found J.S. pale, cold, and limp. Recognizing that something was wrong, Mr. Lyman performed CPR on J.S. Ms. Thompson then rushed J.L. to the Geary County Hospital ("GCH"). The emergency department attempted to intubate J.S. without success until the fifth attempt. GCH staff informed Mr. Lyman and Ms. Thompson that they believed J.S. had suffered from interrupted SIDS, and that he would receive better treatment at Children's Mercy Hospital ("CMH") in Kansas City. Arrangements were made for J.S. to be transported via life flight to CMH.

. . .

Detective Odell served as ("Junction City Police Department") JCPD's detective for crimes against children and took over the investigation regarding J.S. Detective Odell previously worked with Dr. Frazier, who led a child abuse team at CMH, and delegated the investigation of J.S.'s child abuse to Dr. Frazier. Throughout the entire investigation, Detective Odell and Dr. Frazier frequently communicated, with Dr. Frazier acting as Detective Odell's medical investigator.

Shortly after J.S. arrived to CMH, Dr. Frazier evaluated J.S. and concluded that J.S. had been abused. Dr. Frazier reported to Detective Odell that J.S. had "bruising and tearing to his anus," "bruising to both cheeks, nose, forehead," "tearing inside his mouth on both top and bottom gums," a "scab at back of [his] head with missing hair," "bleeding around his brain," and "bruising to [his] chest, abdomen, lower back, and buttocks." These findings are not supported by, and are inconsistent with, the GCH emergency department's intake records and the initial responding JCPD officer's documentation. In making these findings, Dr. Frazier did not review the records from GCH or J.S.'s extensive medical records, nor did she speak with staff from GCH, or any family members about J.S.'s complicated medical history.

. . .

Mr. Lyman was interrogated by Detective Odell. During the interrogation, Detective Odell was in contact with Dr. Frazier who helped guide the conversation. Mr. Lyman told Detective Odell about J.S.'s complicated medical history and denied that he or Ms. Thompson had harmed J.S. Based upon Dr. Frazier's report, Detective Odell arrested Mr. Lyman for child abuse and aggravated battery.

. . .

In the early morning hours of September 17, 2013, J.S. was pronounced dead. Later that morning, Detective Odell interviewed Ms. Thompson. Ms. Thompson provided exonerating information for Mr. Lyman, described J.S.'s complicated medical history, and reiterated that Mr. Lyman did not abuse J.S. Instead of accepting Ms. Thompson's explanations, Detective Odell arrested Ms. Thompson for the murder of J.S. He did this so that she would not testify to the exonerating evidence she had provided and in hopes of coercing her to testify against Mr. Lyman. Mr. Lyman's bond for the charge of the murder of J.S. was $1 million, but Ms. Thompson's bond was only $10,000.

Dr. Mitchell, the Deputy District Coroner and the Pathologist for Geary County and its Coroner's office, examined J.S. after his death on two occasions: September 17 and 19, 2023. Dr. Mitchell did not review J.S.'s previous medical records. However, on September 17, Dr. Mitchell found "no rectal tear is defined" and opined that J.S.'s cause of death was "head trauma."

As the charges and investigation were pending, E.L. was placed in foster care. Initially, Ms. Thompson was granted a weekly one-hour visit with E.L. . . . In May 2014, Ms. Thompson gave birth to her and Mr. Lyman's second son, M.L. 24 hours after M.L.'s birth, M.L. was taken from Ms. Thompson and placed in foster care. Ms. Thompson was only granted four hours of visitation per day with her newborn.

Throughout the investigation and for at least 20 months, Ms. Thompson's visitation rights fluctuated as Defendants attempted to bargain with her. When they wanted to encourage her to cooperate with Mr. Lyman's prosecution, they would grant her more visitation. When they wanted to discourage her from supporting Mr. Lyman, they would cut her visitation back. Detective Odell testified at child custody hearings to prevent Ms. Thompson from receiving custody of her sons. Ms. Thompson's mother filed for custody of her grandchildren, but Detective Odell caused Geary County to object to the minors' grandmother taking custody. Instead, E.L. and M.L. were left in the foster care system where Detective Odell could continue using them as leverage over Ms. Thompson.

Leveraging Ms. Thompson's custody rights worked. Ms. Thompson did not testify at Mr. Lyman's trial or sentencing hearing even though she had alibi evidence and exonerating testimony. On May 14, 2015, Mr. Lyman was convicted of murder in the first degree, child abuse, and aggravated battery. He was found not guilty of aggravated criminal sodomy. On July 17, 2015, he was sentenced to life in prison

with the possibility of parole, to run concurrent with separate 41-month and 32-month sentences. After Mr. Lyman's sentencing, on August 3, 2015, Ms. Thompson was returned custody of E.L. and M.L. At the time, her charges for murder were still pending. But on September 8, 2015, without ever having a preliminary hearing, Geary County dismissed the charges against Ms. Thompson. At some point, Ms. Thompson and Mr. Lyman were divorced because of his convictions.

Over the next several years, Mr. Lyman challenged his convictions. Mr. Lyman presented expert testimony indicating that J.S. died from natural causes and that the evidence relied upon by Dr. Frazier and Dr. Mitchell was not indicative of abusive head trauma, but rather complications from a medical condition.

. . .

Geary County's [hired] Dr. Jane Turner [to review the case]. She reviewed the evidence and determined in a June 26, 2023, report that J.S. suffered from "a serious fungal infection involving his skin, scalp, oral cavity, lungs, and brain" and ultimately concluded that J.S.'s cause of death was "disseminated fungal infection and the manner of death is natural." On July 12, 2023, Geary County dismissed the charges against Mr. Lyman, and he was freed.[2]

The Amended Complaint additionally alleges that May 6, 2024, was the first day that Ms. Thompson knew that Detective Odell, Dr. Frazier, and Dr. Mitchell used false and fabricated evidence to make it appear that J.S. was the victim of abuse and homicide.

After granting in part and denying in part Defendants' motions to dismiss Plaintiffs' initial complaint, Plaintiffs filed for leave to amend their complaint.[3] This motion was unopposed.[4] As such, the Court granted the motion and Plaintiffs refiled six Counts under 42 U.S.C. § 1983 for violations of various constitutional rights. Count I alleges that Defendants fabricated and perpetuated false evidence. Count II alleges that Defendants conspired to deprive Plaintiffs of their constitutional rights by fabricating and perpetuating false evidence. Count III alleges that

---

[2] *Lyman v. Bd. of Cnty. Comm'rs of Cnty. Of Geary Cnty.*, 2025 WL 2855388, at *1–4 (D. Kan. Oct. 8, 2025).

[3] Doc. 62.

[4] *See* Docs. 62 & 63.

Defendants committed *Brady* violations and fabricated evidence. Count IV alleges that Defendants maliciously prosecuted and unlawfully detained Plaintiffs. Count V alleges that Defendants conspired to deprive Plaintiffs of their constitutional rights, specifically the right to familial association. Count VI alleges that Defendants interfered with their family relationships. All claims are brought by each Plaintiff and against each Defendant. The Defendants subsequently filed the present Motions to Dismiss which have been fully briefed and are ripe for the Court's ruling.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[5] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[6] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[7] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[8] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[9] But "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[10]

---

[5] Fed. R. Civ. P. 12(b)(6).

[6] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[8] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[9] *Iqbal*, 556 U.S. at 678–79.

[10] *Id.* at 663.

### III.   Analysis

The Court will first address Defendants' common arguments related to the application of the statute of limitations to Ms. Thompson's claims and then address the specific arguments of each Defendant related to the other claims.

### A.   Statute of Limitations on Ms. Thompson's Claims

Each of the Defendants argue that Ms. Thompson's claims are time-barred. The arguments presented in the briefings on each motion are similar, so the Court will address Defendants' challenges together. Ms. Thompson responds with several arguments to save her claims from the statute of limitations. She invokes the federal discovery rule, the doctrine of equitable estoppel, and equitable tolling.[11] Because applying the federal discovery rule saves Ms. Thompson's claims, the Court only addresses that argument.

Courts look to state law to determine the applicable limitations for a § 1983 action because § 1983 does not contain an express statute of limitations.[12] As most § 1983 actions are actions for injury to a personal right, courts "apply the statute of limitations applicable for personal injury actions in the state where the claim accrued."[13] Applied here, the statute of limitations is two years.[14] However, federal law controls when a federal cause of action accrues.[15]

---

[11] Ms. Thompson also raises her novel argument that § 1983 is not subject to a state statute of limitations. She made the same argument in response to Defendants' motion to dismiss her claims in the initial complaint. The Court rejected the argument in its last order on Defendants' motion to dismiss and similarly rejects it here. *See Lyman*, 2026 WL at *7.

[12] *Keith v. Koerner*, 843 F.3d 833, 850 (10th Cir. 2016) (citing *Garcia v. Wilson*, 731 F.2d 640, 642 (10th Cir. 1984)).

[13] *Id.*

[14] K.S.A. 60-513(a)(4); *see also Keith*, 843 F.3d at 850–51 ("The two-year statute of limitation for injuries to the rights of others . . . applies to civil rights actions brought pursuant to section 1983." (quoting *Cameron v. Stotts*, 42 F.3d 1482 (Table), 1994 WL 697385, at *1 (10th Cir. 1994))).

[15] *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (citing *Baker v. Bd. of Regents of the State of Kan.*, 991 F.3d 628, 632 (10th Cir. 1993)).

"[U]nder the federal discovery rule, claims accrue and 'the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.'"[16] "The injury in a § 1983 claim is the violation of a constitutional right, and such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'"[17] Generally, the statute of limitation begins to run on both a fabrication of evidence claim and on a malicious prosecution claim when there is a favorable termination of the prosecution.[18] But a further requirement to bring a § 1983 claim for violation of a constitutional right is showing that defendants "personally participated in the alleged constitutional violation."[19] "A plaintiff's failure to satisfy this requirement will trigger swift and certain dismissal."[20]

In the Amended Complaint, Ms. Thompson clearly alleges that May 6, 2024, was the first day that she knew that Detective Odell, Dr. Frazier, and Dr. Mitchell used false and fabricated evidence to make it appear that J.S. was the victim of abuse and homicide. Defendants challenge the veracity of this allegation by pointing to other events that should have put Ms. Thompson on notice of the fabricated evidence. However, at this stage of the proceedings, the Court must accept Ms. Thompson's assertion as true. Because all six of Ms. Thompson's claims are premised upon the fact the Defendants used fabricated evidence, application of the federal discovery rule to the facts alleged by Ms. Thompson in the Amended Complaint requires the Court to conclude that Ms.

---

[16] *Id.* (alterations omitted) (quoting *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)).

[17] *Lawson v. Okmulgee Cnty. Crim. Just. Auth.*, 726 F. App'x 685, 691 (quoting *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998)).

[18] *McDonough v. Smith*, 588 U.S. 109, 116–17 (2019).

[19] *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018).

[20] *Est. of Roemer v. Johnson*, 764 F. App'x 784, 790 n.5 (10th Cir. 2019) (citations omitted).

Thompson's claims accrued on May 6, 2024. Because she filed suit within two years of that date, her claims are not barred by the statute of limitations.

## B.    Dr. Mitchell's Remaining Arguments

Dr. Mitchell raises a broad argument that Plaintiffs should not be allowed to replead claims that were dismissed by the Court's prior Order. Rather, Dr. Mitchell contends Plaintiffs should have filed a motion to reconsider the Court's order dismissing Plaintiff's claims prior to seeking leave to amend their complaint. There is authority for Dr. Mitchell's contention in *Walker v. Corizon Health, Incorporated.*[21] However, in that case (and the cases it cites) the defendants raised this argument in opposition to the plaintiffs' motions for leave to amend. Here, however, Defendants did not oppose Plaintiffs' motion for leave to amend their Complaint. Plaintiffs' request included the claims previously dismissed. But because the motion to leave to amend was unopposed, the Court granted Plaintiffs' request to replead these claims. Accordingly, Dr. Mitchell's argument on this point waived.

Dr. Mitchell moves to dismiss Counts III, V, and VI as brought by Mr. Lyman.[22] In its previous order, the Court dismissed these claims finding that Mr. Lyman did not plead facts sufficient to overcome Dr. Mitchell's qualified immunity in Count III, that he did not make more than conclusory allegations of a conspiracy against Dr. Mitchell in Count V, and that he did not plead facts sufficient to support the conclusion that Dr. Mitchell intended to interfere with the Plaintiffs' right to familial association in Count VI.[23] Plaintiff's Amended Complaint does little to address these issues; there are no additional facts specific to Dr. Mitchell in the Amended

---

[21] 2020 WL 2473706, at *6 (D. Kan. May 13, 2020).

[22]

[23] *Lyman*, 2025 WL 2855388, at *12–14.

Complaint that were not present in Plaintiff's initial complaint. In the briefing on Dr. Mitchell's present Motion, the parties do little more than reference their previous arguments applicable to the initial complaint and the corresponding previously filed motion to dismiss. Because the facts remain the same and the arguments have not changed, the Court finds its reasoning equally applicable here and dismisses Counts III, V, and VI brought against Dr. Mitchell by Mr. Lyman. The same reasoning applies to those Counts brought by Ms. Thompson, so the Court dismisses Counts III, V, and VI brought by Ms. Thompson against Dr. Mitchell. However, Dr. Mitchell does not move to dismiss any claims brought by E.L. and M.L.; accordingly, all claims brought by E.L. and M.L. in the Amended Complaint must proceed against Dr. Mitchell.

## C.    Dr. Frazier's Remaining Arguments

Dr. Frazier moves to dismiss Plaintiffs' Conspiracy Claim in Count V. "To prove a conspiracy under § 1983, a plaintiff must show 'at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective.'"[24] Plaintiffs' Count V is about withholding exculpatory evidence. Plaintiffs plead that Dr. Frazier was not an independent medical investigator but was Detective Odell's investigator. Further, they allege that, under Detective Odell's supervision, Dr. Frazier focused her investigation on Mr. Lyman while suppressing other evidence. As pled, these facts show Dr. Frazier and Detective Odell working together to suppress evidence. This is enough to nudge Plaintiffs' claim of Conspiracy claim in Count V as to Dr. Frazier across the plausibility line.

---

[24] *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021) (quoting *Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir. 2010)).

Next, Dr. Frazier moves to dismiss Count VI, Interference with Familial Relationships, brought by all Plaintiffs. A "forced separation of parent from child, even for a short time, represents a serious impingement" on a parent's right to familial association.[25] To make a claim for a violation like this, "a parent must allege 'intent to interfere' with this right—that is, the defendant must have directed conduct at the familial relationship 'with knowledge that the statement or conduct will adversely affect that relationship.'"[26] Dr. Frazier argues that Plaintiffs have not pled sufficient facts to show that she intended to interfere with these relationships. However, Plaintiff's Amended Complaint alleges that Dr. Frazier worked closely with Detective Odell to "abduct" E.L. after Mr. Lyman's arrest. Plaintiffs plead that "the sole reason for arresting Mr. Lyman and abducting E.L. from Ms. Thompson was to create leverage" in the investigation and prosecution of Mr. Lyman. These facts require the conclusion that Dr. Frazier knew of and intended to interfere with the familial relationship to achieve a particular purpose. When coupled with the Plaintiffs' other allegations that Dr. Frazier fabricated and suppressed evidence, there is more than enough for the Court to conclude that Plaintiffs have plausibly alleged that Dr. Frazier intended to interfere with the Plaintiffs' familial relationships.

Finally, Dr. Frazier seeks to dismiss E.L. and M.L.'s Count V Conspiracy claim, arguing that E.L. and M.L. have not pled an underlying constitutional violation. However, the constitutional violation pled in Count VI is brought by all Plaintiffs—including E.L. and M.L.— and that claim survives Dr. Frazier's motion to dismiss. Therefore, Dr. Frazier's argument that E.L. and M.L. have no underlying constitutional claim upon which to base their conspiracy claim

---

[25] *P.J. ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1199 (10th Cir. 2010).

[26] *Thomas v. Kaven*, 765 F.3d 1183, 1195–96 (10th Cir. 2014) (quoting *Lowery v. Cnty. of Riley*, 522 F.3d 1086, 1092–93 (10th Cir. 2008)).

fails. Dr. Frazier has not moved to dismiss any other claims brought by E.L and M.L. Accordingly, the claims brought by E.L. and M.L. against Dr. Frazier must go forward.

## D.    Detective Odell's Remaining Arguments

Detective Odell seeks to dismiss Mr. Lyman's Count III, which alleges that Detective Odell committed *Brady* violations and fabricated evidence. But Detective Odell makes a hyper-focused argument that he is not liable for a *Brady* violation pertaining to a report that he provided to the Geary County prosecutor. He argues that Mr. Lyman should be judicially estopped from alleging he committed a violation because, in Mr. Lyman's habeas case, Mr. Lyman acknowledged that Detective Odell did provide the report to the prosecutor. But Detective Odell misses the forest for the trees. Plaintiff's Amended Complaint paints Detective Odell as one of the primary agents in suppressing favorable information and fabricating evidence throughout the entirety of the investigation and prosecution of Mr. Lyman. As such, even if Mr. Lyman was judicially estopped from making asserting a *Brady* violation specific to Dr. Mitchell's report, Plaintiffs' Amended Complaint alleges several other ways Detective Odell suppressed information. Accordingly, Mr. Lyman's claim against Detective Odell in Count III must proceed.

Next, Detective Odell seeks to dismiss Counts V and VI brought by Mr. Lyman. Regarding the Conspiracy claim in Count V, Detective Odell presents several assertions that he was duty-bound to take the actions he took in investigating Mr. Lyman. Further, he asserts that the conduct described by Plaintiffs is "parallel conduct" rather than evidence of a conspiracy.[27] But, once again, the Amended Complaint is littered with facts alleged against Detective Odell suggesting that he worked with Dr. Frazier to fabricate and suppress evidence. With regard to Count VI, Interference

---

[27] *Twombly*, 550 U.S. at 557 ("A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary.").

with Familial Relationships, the same facts are pled against Detective Odell as they are against Dr. Frazier. Most notably, Plaintiffs allege that Detective Odell abducted E.L. for the sole purpose of applying leverage to Ms. Thompson in furtherance of his investigation and prosecution of Mr. Lyman. Further, Plaintiffs allege that Detective Odell testified at the child custody hearings. As with Dr. Frazier, these facts are sufficient to plausibly allege that Detective Odell intended to interfere with Plaintiffs' familial relationships. As such, Mr. Lyman's Counts V and VI must proceed against Detective Odell.

Finally, Detective Odell is the only Defendant that seems to recognize that E.L. and M.L. bring all six claims in the Amended Complaint. In its prior order, the Court previously addressed E.L. and M.L.'s claims of fabrication of evidence, conspiracy to fabricate false evidence, and malicious prosecution claims.[28] The Court found that these claims are limited to a criminal-type case, and because E.L. and M.L. were not criminally prosecuted, they could not bring these claims.[29] The same reasoning applies to the *Brady* violation claim in Count III. Nothing presented in the Amended Complaint or Plaintiffs' briefing changes the Court's previous analysis. Accordingly, the Court dismisses Counts I–IV as alleged against Detective Odell. However, as discussed above, E.L. and M.L. have alleged facts sufficient to plausibly state Counts V–VI.

With various Plaintiffs and various Defendants and differing outcomes specific to each motion, the Court summarizes the remaining claims against the Defendants below:

- Dr. Mitchell: Ms. Thompson's Counts I–VI. Mr. Lyman's Counts I, II, and IV; and E.L. and M.L.'s Counts I–VI.
- Dr. Frazier: Counts I–VI brought by all Plaintiffs.
- Detective Odell: Ms. Thompson's Counts I–VI; Mr. Lyman's Counts I–VI; and E.L. and M.L's Counts V–VI.

---

[28] *Lyman*, 2025 WL 2855388, at *14–15.

[29] *Id.*

-13-

**IT IS THEREFORE ORDERED** that Dr. Mitchell's Partial Motion to Dismiss (Doc. 67) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Dr. Frazier's Motion to Dismiss (Doc. 71) is **DENIED**.

**IT IS FURTHER ORDERED** that Detective Odell's Motion to Dismiss (Doc. 69) is **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED**.

Dated this 4th day of August 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE1